# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BHARTI R. BHARWANI and ROBERT A. ZIRINSKY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINCOLN NATIONAL CORP., and LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>Defendants. | Civ. A. No.:<br><br>COMPLAINT – CLASS ACTION<br><br><u>JURY TRIAL DEMANDED</u> |

## CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Bharti R. Bharwani and Robert A. Zirinsky (collectively "Plaintiffs"), by and through their undersigned attorneys, bring this action on behalf of themselves and all others similarly situated against Defendants Lincoln National Life Insurance Company ("LNLIC") and Lincoln National Corp. ("LNC") (collectively "Defendants" or "Lincoln"). Plaintiffs allege the following on information and belief, except as to those allegations that pertain to themselves, which they allege on personal knowledge.

## NATURE OF THE ACTION

1.       In and around the early 2000's and thereafter, Defendants' predecessor in interest, Jefferson-Pilot Life Insurance Company ("Jefferson-Pilot"), sold JPF Legend 300 and 400 Flexible Premium Adjustable Life Insurance policies (collectively "Policies") under which it agreed to credit interest on policyholders' accounts at a guaranteed rate  no less than 4%. Plaintiffs bought such Policies in order that they and their families would be protected as they entered their senior years.  Defendant Lincoln acquired Jefferson-Pilot in a merger completed in April 2006 and assumed all responsibilities and contractual obligations under the Policies with Plaintiffs and similarly situated policyholders.

2.     Recently, commencing in and from September, 2016, and despite many years of improved mortality experience, which is projected to continue in the future, Defendants started to unilaterally and substantially increase the "cost of insurance" ("COI") rates on the Policies, which in turn increased the "Monthly Deduction" ("MD") withdrawals from policyholders' policy values, with a resulting and significant increase in annual policyholder premiums required to maintain the Policies in force over time.  Defendants imposed the COI rate increase to shift to the policyholders Lincoln's own obligation to pay interest at the guaranteed minimum rate and to recoup past losses or reduced profits on the Policies. The COI rate increase and resulting MD and premium increases were also a stratagem designed to force or induce widespread policy terminations by policyholders (known as "*shock lapses*") who could no longer afford, or would have no rational reason to pay, the substantial premium increases.

3.     Plaintiffs  purchased the Policies identified herein and seek damages and equitable relief to halt  and reverse Defendants' unfair, unlawful and significantly increased COI rates and associated MD withdrawals from their policy values, which, if allowed to persist, will cause irreparable injury to Plaintiffs and other members of the putative Classes (collectively, the "Class Members"). As further described below, Defendants' unfair, unlawful and unilateral increase in the COI rates and consequent increased premiums required to keep the Policies in force constitutes a breach of its express and implied obligations under the Policies.

## THE PARTIES

**Plaintiffs**

4.     Plaintiff Bharti R. Bharwani ("Bharwani") is a 51 year old individual who, at all times material hereto, was and is a domiciliary of the State of New Jersey and currently resides in Parsippany, New Jersey.

5.     On or about April 28, 2003, Jefferson-Pilot, from its home office in Greensboro, North Carolina, issued to Plaintiff Bharwani, as both the owner and the insured, a JPF Legend 300 Flexible Premium Adjustable Life Insurance policy insuring her life, with a face amount of $500,000.  On or about October 28, 2016, Defendants notified Ms. Bharwani that the monthly

deduction amount to be withdrawn from her policy value resulting from the COI rate increase was increasing, which effected a consequent increase of the annual premium necessary to maintain coverage from $4,700 per year to $5,085 for the current policy period, in addition to other adverse changes.

6.     Plaintiff Robert A. Zirinsky ("Zirinsky") is a 63 year old individual who, at all times material hereto, was and is a domiciliary of the State of New York and currently resides in New York, New York.

7.     On or about February 27, 2003, Jefferson-Pilot, from its home office in Greensboro, North Carolina, issued to Mr. Zirinsky, as both the owner and the insured, a JPF Legend 400 Flexible Premium Adjustable Life Insurance policy insuring his life, with a face amount of $1,250,000, which was thereafter increased to $1,788,340.58, effective June 27, 2014. On or about September 13, 2016, Defendants notified Plaintiff Zirinsky that the monthly deduction amount to be withdrawn from his policy value resulting from the COI rate increase was increasing, which effected a consequent increase of the annual premiums necessary to maintain coverage from $186.55 per year to $4,203 for the current policy period.

**Defendants**

8.     Defendant Lincoln National Corp. ("LNC") has its home office and principal place of business at 150 North Radnor-Chester Rd., Radnor, Pennsylvania 19087.  LNC is and has been at all times material a corporation organized under Indiana law.  LNC acquired Jefferson-Pilot for about $7.5 billion in cash and stock in a merger consummated in 2006. Headquartered in Philadelphia, Pennsylvania, the combined company is one of the largest publicly traded life insurance companies in the United States of America.  LNC is the parent of its subsidiary, Defendant Lincoln National Life Insurance Company ("LNLIC").   Lincoln Financial Group is the marketing name for Lincoln National Corp. and its affiliates.  As a result of the merger of LNC and Jefferson-Pilot in 2006, all of Jefferson Pilots' insurance policies that are the subject of this lawsuit were absorbed, owned and controlled by the combined company

3

which sold and operated its universal life insurance products through its subsidiary LNLIC and LNC's marketing arm doing business as Lincoln Financial Group.

9.      Defendant Lincoln National Life Insurance Company ("LNLIC") is a corporation organized under Indiana law, with its principal place of business at 1300 South Clinton Street, Fort Wayne, Indiana 46802.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the parties to this action.  Defendants transact business in Pennsylvania and have been doing so for decades. Many thousands of the Class Members are resident citizens of the Commonwealth of Pennsylvania.

11.     Jurisdiction over Defendants is also proper because they have purposely availed themselves of the privilege of conducting business activities in Pennsylvania and because they currently maintain systematic and continuous business contacts with the Commonwealth of Pennsylvania.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants maintain a business headquarters, business agents and operatives in this District; many thousands of Class Members either reside or did business with Jefferson-Pilot or the Defendants in this District; Defendants engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District, and Defendants entered into transactions and received substantial profits from policyholders who reside in this District.

13.     This Court has subject matter jurisdiction based on diversity of citizenship. Additionally, because this complaint alleges claims on behalf of a national class of policyholders who are minimally diverse from Defendants, and because the aggregate of these claims exceed $5,000,000, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d).  Supplemental jurisdiction over Plaintiffs' state law claims is proper under 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

**A.      Background on Universal Life Policies**

14.      Over the years, Defendants and their predecessor, Jefferson-Pilot, have sold whole life insurance, term life insurance and universal life insurance policies to consumers.   As the terminology suggests, term life insurance is issued for a specific period of years.   A term life policy does not build up or accumulate cash value and expires at the end of its term of years without any policy value.

15.      So-called "whole life" insurance provides coverage for life.   The premiums that are paid by the policyholder are constant during the life of the policy.   As the premiums are paid, the policy grows cash value that can be accessed by the policyholder, if needed.

16.      "Universal life" insurance combines the elements of both whole life insurance and term life insurance, consequently providing greater flexibility.   Universal life insurance provides a traditional income protection component while also offering a long-term investment component.   Universal life insurance policyholders are able to make adjustments with respect to allocations between the insurance and savings components of the policy, and can adjust both the amount and frequency of premium payments, *provided* the policy itself contains sufficient cash value to cover monthly deductions in connection with "Cost of Insurance" (COI) charges. Premium payments, which can be variable, are credited to the insured's account or policy value. The account or policy value is also credited with monthly interest at a non-guaranteed declared rate, but not less than the guaranteed rate specified in the policy contract.   Monthly cost of insurance and expense charges are deducted from the policyholder's account, thus reducing account or policy value.

17.      Mortality risk is one of the basic factors needed to calculate a target premium (the projected premium amount necessary to maintain coverage in force for a specified time) using mortality tables listing the mortality experience of individuals by age.   The charge for mortality risk built into all universal life policies is considered a COI charge.

18.     The calculation and imposition of a COI rate (which is the primary charge included in the monthly deduction amount) has significant consequences for universal life policyholders and is typically the highest expense borne by a policyholder. This is significant because the monthly deduction is taken from the cash value of the policy — which constitutes the savings component of the policy.

### a.     The Standardized Policy Terms

19.     Plaintiffs bring this class action on behalf of themselves and all other owners and former owners of certain universal life insurance policies referred to as JPF Legend 300 or 400 Flexible Premium Adjustable Life Insurance issued by Jefferson-Pilot and subsequently assumed and administered by Defendants (the "Policies").[1] The Policies contain standardized, materially uniform language with respect to the policy provisions at issue in this action. Each of the Jefferson-Pilot policies in the product lines in question contains uniform language governing how the monthly deduction and the associated COI rate are determined. The Policies, which are form policies respecting which insureds are not permitted to negotiate different terms, constitute contracts of adhesion.

20.     As provided under the uniform provisions of the Policies, Lincoln calculates a "policy value" for each policy, "on each monthly anniversary day". As uniformly set forth in the Policies, the policy value equals the sum of the policyholder's premiums plus interest, less the monthly deductions and reductions in policy value caused by any partial surrenders and withdrawals.

21.     The policy value is credited with interest at a rate declared by Lincoln each anniversary date, that is not less than the guaranteed interest rate specified in the policy. The

---

[1]     The JPF Legend 300 Flexible Premium Adjustable Life Insurance policy issued to Plaintiff Bharwani, including illustrations, is appended as Exhibit A hereto. The JPF Legend 400 Flexible Premium Adjustable Life Insurance policy issued to plaintiff Zirinsky, including illustrations, is appended as Exhibit B hereto. Both Exhibit A and Exhibit B are copies of the standardized policy contract.

6

Policies provide that Jefferson-Pilot, now Lincoln, will pay guaranteed interest at the rate of 4%. The Policies expressly define guaranteed interest rate crediting and the insurers ability to credit interest in excess of the guaranteed rate "as determined by us," in a section entitled "Nonforfeiture Provisions" under the subsection topic heading "Interest Rate," followed by individually expressed and separate subsections entitled "Monthly Deduction," "Cost of Insurance" and "Cost of Insurance Rates."

### b.   Monthly Deduction

22.     At the end of each monthly anniversary day, Lincoln withdraws an amount from the policy value ("Monthly Deduction" or "MD"). The Monthly Deduction for each policy month is computed as the cost of insurance (and the cost of additional benefits provided by rider for the policy month), plus the sum of all administrative charges for the policy (and any riders due that month as shown in the policy). Deductions from policy value are made every month throughout the life of the policy regardless of whether or not premiums are paid.

### c.   Cost of Insurance

23.     Lincoln determines the cost of insurance on a monthly basis as the cost of insurance rate for the month, multiplied by the number of thousands of 'net amount at risk' for the month. The so called "net amount at risk" for a month is computed as the "death benefit for the month before reduction for any indebtedness, discounted to the beginning of the month at the guaranteed rate", less "the policy value at the beginning of the month."

24.     Small changes in the Cost of Insurance rate ("COI Rate") can produce a dramatic increase in the dollar amount of the Monthly Deduction charged by Lincoln. And consequently, the higher the COI Rate, the greater the amount of the premiums required to maintain a positive policy value balance and avoid a lapse of the policy. The COI Rate is by far the most important component of the Monthly Deduction charge.

25.     According to the standardized policies, Defendants may adjust the COI Rate only as follows:

7

**Cost of Insurance Rates**: The monthly cost of insurance rates are determined by us. Rates will be **based on** our expectation of **future mortality, interest, expenses, and lapses**. Any change in the monthly cost of insurance rates used will be on a uniform basis for Insureds of the same rate class. **Rates** will **never** be **larger than** the **maximum rates** shown on page 11. The maximum rates are **based on the mortality table** shown on page 4. (Emphasis supplied)

26. Nowhere does the language of the Policies give Lincoln the authority to increase COI Rates and the Monthly Deduction based on poor returns in its investment portfolio eroding its desired interest rate spread (the difference between the amount earned by Lincoln on its assets and the interest rate credited under the Policies). Nowhere does the language of the Policies authorize Lincoln to increase COI Rates and consequently increase the Monthly Deduction in order to recoup past losses or to recover for prior profits lower than the profitability assumed at pricing, including those associated with its guaranteed or non-guaranteed interest rates. Nor do the Policies disclose any ability or intent to do so. As such, Lincoln may not increase its COI Rates and in turn, its Monthly Deduction to recoup past losses, to recover for prior profits lower than the profitability assumed at pricing. Furthermore, Lincoln may not increase the COI Rates when there is no reasonable expectation of a future adverse change in mortality, interest, expenses and/or lapses, the combined effect of which would make the Policies less profitable in future years than the profitability assumed at pricing.

27. Alternatively, the Policies' uniform provisions governing the changes in the COI Rates and the provisions governing the contractually guaranteed interest rate are at a minimum ambiguous and therefore must be construed (a) against Jefferson Pilot (and successor Lincoln), who drafted them, and (b) consistent with the objective expectations of a reasonable policyholder.

28. The Policies' uniform provisions governing credited interest rates and those governing the contractually guaranteed interest rates are contained in uniform sections of the Policies that are separate and apart from the Monthly Deduction provisions. Further, the COI Rate provisions of the Policies refer the policyholder to the guaranteed maximum rates set forth in yet another section of the policy form, which reflects that, for non-smokers, the "Guaranteed

8

Maximum Cost of Insurance Rates" are based on the "1980 CSO Male [or Female] Nonsmoker Table" and determined exclusively by "Attained Age." For tobacco users, the "Guaranteed Maximum Cost of Insurance Rates" are based on the "1980 CSO Male [or Female] Smoker Table" and also are determined exclusively by "Attained Age."

29.     Accordingly, a reasonable Policyholder would construe the standardized policy language to mean that the Monthly Deduction, which is premised on the purported COI Rate and the 1980 CSO mortality tables, would not change except for a verifiable, material adverse change in the underlying mortality-based factors used to price the Policies. As reflected in every subsequent version of the CSO and comparable mortality tables, mortality rates have only improved in the years since the Policies were issued.   As a result of those improvements, the overall mortality experienced by Lincoln as of the date of the COI Rate increases is at a level lower than 60% of the mortality assumed when the Policies were priced.

30.     In addition to the mortality based factors constraining COI Rate increases, a reasonable policyholder would also construe (a) the Policies' separate provisions governing the payment of guaranteed interest on the account and (b) the Policies' separate provisions governing the Monthly Deduction based on Lincoln's COI Rates, as operating independently of one another, thereby precluding Defendants from offsetting or subsidizing its credited interest obligations through increases in the COI Rate and consequent Monthly Deduction.   Moreover, a reasonable policyholder would construe the reference to "interest" in the list of future expectation cost factors on which the COI Rate may be based to be limited to verifiable, adverse expected *future* changes in Lincoln's interest costs, rather than any *past* deterioration in interest rate spreads, *past* deviations between assumed and actual profits or any attempt to increase future profits to a level higher than the profitability assumed at pricing.   Lincoln's expectation as to future interest rates is not materially more adverse than its interest experience over the past many years or the rates assumed at pricing for later durations.

**Lincoln Has Officially Represented as of December 31, 2015
An Expectation That Mortality Experience Would Improve**

31.     The Monthly Deduction and associated Cost of Insurance Rate are considered "non-guaranteed elements" of the Policies.  Insurance companies and their actuaries must file an annual statement with regulatory agencies every year, providing answers to interrogatories addressing the determination by the company of non-guaranteed elements.

32.     In Lincoln's 2015 NAIC Annual Statement executed on January 29, 2016 by Senior Vice President Michael Parker, FSA, MAAA, for the period ending December 31, 2015, answering interrogatories addressing non-guaranteed elements, Lincoln represented that "cost factors that can vary are ***periodically reviewed*** and may be adjusted based on changes in ***prospective*** assumptions" adding that "those adjustments are made in a way that ***past losses*** (i.e. experience less favorable to the company than expected) are ***not recouped***."  (Emphasis added). It also represented as of January 29, 2016, that "there are no material variations" respecting any changes in the values of non-guaranteed elements on new or existing business authorized for illustration or actually charged or credited.  (See Exhibit C-1).  Regarding the question of whether the "anticipated experience factors underlying any non-guaranteed elements [are] different from current experience," Lincoln responded that "in the determination of policy cost factors for some non-guaranteed products, it is anticipated that expenses will continue to increase in the future with inflation" and that "investment yields may continue to decline and result in compression of spreads between earned rates and crediting rates." (Exhibit C-1).  These responses clearly acknowledge expressly and by implication that Lincoln may not increase the COI Rate and Monthly Deduction in order to recover past losses, and may not do so in any event absent an expectation of future adverse changes respecting mortality rates and interest rates compared to the experience factors assumed at pricing.

33.     Nowhere in its responses associated with its 2015 NAIC Annual Statement did LNLIC state, express or represent that it  expected or anticipated an adverse change in mortality experience, or that there was any verifiable, credible expectation that interest rates will decline,

let alone to levels lower than current or priced-for experience.  To the contrary, LNLIC's 2015 NAIC Annual Statement executed on January 25, 2016 by Vice President Stephen Turer, FSA, MAAA, for the period ending December 31, 2015, affirmatively represented that, among the anticipated factors underlying any non-guaranteed element that are different from its current experience, "***mortality experience*** is also predicted ***to improve*** in the future." (Emphasis added). Indeed, as alleged above, mortality experience is and had been improving before and after LNLIC's 2015 NAIC Annual Statement executed by Mr. Turer. (See Exhibit C-2).

### Defendant's Excessive Monthly Deduction Rate Increase Scheme

34.     Effective October 9, 2016, Lincoln began to unilaterally increase the monthly Cost of Insurance rates  and related Monthly Deduction charges under the Legend Series Universal Life Policies, issued by Jefferson Pilot, consequently requiring significantly increased policyholder premiums to maintain coverage for the periods originally illustrated to policyholders.

35.     Upon notifying policyholders of the COI Rate increase through a form letter (*see* e.g. Exhibit D), Lincoln represented that it was increasing the Cost of Insurance Rate and thus, consequently increasing the Monthly Deduction under the Policies, because "we are operating in a challenging environment as we continue to face nearly a decade of persistently low interest rates, including recent historic lows, and volatile financial markets."  Lincoln's form letter to policyholders went on to misleadingly ensure policyholders as follows:

> Prudent management of our business and monitoring of the external environment have been crucial to Lincoln's 110 year track record of helping people secure their financial futures, and remains so today.  This includes making fair and responsible adjustments as necessary and appropriate to ensure we are providing value to our customers while operating responsibly for the long-term.

36.     No other explanation for the COI Rate increase in the face of improving mortality rates and an improving interest rate environment was provided by Lincoln's notice letter.

37.     Tellingly, Lincoln did not state that it was increasing rates due to projected future adverse cost increases.  Instead, its notice dwelled on past costs — e.g. "we continue to face nearly a decade of persistently low interest rates, including historic laws."

38.     Thereafter, Lincoln began imposing the COI Rate increase and increased the Monthly Deductions on Policies at excessive levels, consequently resulting in extraordinary premium increases in order to keep the Policies in force in many instances.

39.     Because of the COI Rate increase, Class Members are now required to absorb a much higher Monthly Deduction to maintain the same level of coverage for the periods anticipated when the Policies were purchased, such that Policies have or shall become cost-prohibitive.   By increasing the COI Rates and Monthly Deduction charges, Defendants consequently are forcing Plaintiffs and other policyholders to absorb and pay premiums that are so high that they undermine or destroy any economic justification for doing so in order to maintain the ultimate death benefits.  As Defendants know, the unlawful COI Rate increase will result in mass terminations by policyholders who decide to access their Policies' cash values before those values are depleted and ultimately exhausted by increased Monthly Deductions, thereby resulting in the forfeiture of all previously paid policy premiums. Meanwhile, in either event, Defendants benefit through higher premium payments and excessive Monthly Deduction charges, enabling Lincoln to recoup past financial reversals, or entirely avoid its contractual obligations under its Policies, and even enjoy a windfall, by virtue of forced *shock lapses*.

## Lincoln Has Concealed the True Reasons for the MD Rate Increase

40.     Lincoln's COI Rate increase and increased Monthly Deductions are  the result of Defendants' desire to avoid Lincoln's  contractual obligation to meet the high interest crediting rates it promised under the Policies and to recoup past losses or past profits lower than the level of profitability assumed at pricing – thereby increasing future profits to levels higher than those projected at pricing --  despite an improved mortality rate and expected improved future interest rate environment, and contrary to representations in its yearly "NAIC Annual Statement" that "adjustments are made in such a way that *past losses … are not recouped."*  (Emphasis added).

12

Plaintiffs are informed and believe that Lincoln's "COI Rate" adjustment is not based on changes in prospective assumptions as opposed to prior losses and historic costs that it seeks to recapture.

41.     Insurance company actuaries are required to closely monitor and report on cost of insurance trends affecting non-guaranteed elements of its insurance policies.  Material deviations between current and expected future expectations as to COI do not occur overnight; they are gradual trends for which actuaries can and do make incremental adjustments as Lincoln acknowledged in its annual statement answers to interrogatories.

42.     Interest rates gradually declined since the early 2000's ultimately reaching historic lows.  In the late 1980s, the 10-year Treasury rate was around 9%. The trend of the 10-year Treasury was steadily downward throughout the 1990s.  Between 2003 and 2008 it fluctuated generally between 4% and 5%. Since mid-2008, however, the 10-year Treasury has been under 4%, hitting a low of 1.65% in 2012.

43.     In April 2012 the Center for Insurance Policy & Research ("CIRP"), a branch of the National Association of Insurance Commissioners, published a report warning of the effects on insurers of a prolonged period of low level interest rates, stating in relevant part:

> Life insurance companies face considerable interest rate risk given their investments in fixed-income securities and their unique liabilities. For life insurance companies, their assets and liabilities are heavily exposed to interest rate movements. Interest rate risk can materialize in various ways, impacting life insurers' earnings, capital and reserves, liquidity and competitiveness. Moreover, the impact of a low interest rate environment depends on the level and type of guarantees offered. Much of the business currently on life insurers' books could be vulnerable to a sustained low interest rate environment ....

> Life insurers typically derive their profits from the spread between their portfolio earnings and what they credit as interest on insurance policies. During times of persistent low interest rates, life insurers' income from investments might be insufficient to meet contractually guaranteed obligations to policyholders which cannot be lowered.

***

> In a low interest rate environment, it is challenging to find relatively low-risk, high-yield, long-duration assets to match annuities that guarantee a minimum

annual return (e.g., 4%). For many policies, low interest rates mean that some mismatch with assets is likely. For example, older fixed income insurance products that guarantee rates of around 6%—closely matching or conceivably even surpassing current investment portfolio yields—are likely to put a strain on life insurers as a result of spread compression or possibly negative interest margins.

CIPR Report, at 2-3.

44.     Lincoln's investment returns since at least the beginning of the Great Recession have been lower than the rates assumed at pricing.   These low earned interest rates, in combination with the Policies' 4% guaranteed rate, caused Lincoln to sustain past losses or past profit levels lower than the priced-for levels during those prior years.   Through the COI Rate increase, Lincoln seeks to offset or subsidize its credited interest guarantees and recoup its past financial reversals through a dramatically increased Monthly Deduction taken from the policyholders' policy value that it expects to generate future profits higher than those projected when the Policies were sold. In short, through the sudden and massive COI Rate increase, Lincoln is attempting to avoid its obligation to credit the guaranteed interest rates under the Policies, to recoup past losses or past reduced profits and to shed the Policies by making the premiums to maintain them cost-prohibitive for the policyholders – thereby frustrating the policyholders' ability to receive their contractual benefits under the Policies.

45.     When Jefferson-Pilot priced and sold the Policies, it made a conscious decision to establish a Monthly Deduction schedule that was designed to generate high profits in early durations followed by potential losses in later durations.[2]   Now, Lincoln, the successor to Jefferson-Pilot, wants to have its cake and eat it too, as it seeks to impose unfair and excessive COI Rate increases to recoup the reduced profits and losses resulting from the rate schedule it seeks to jettison, even though its mortality experience has greatly *improved* over the years (so much so that the mortality improvements are expected to result in future profits higher than the

---

[2]     Plaintiffs make this historical reference only to illustrate Lincoln's current motivation for the COI Rate increase. To be abundantly clear, Plaintiffs' claims are instead exclusively premised on Lincoln's actions in imposing its COI Rate increase scheme beginning on or about September 1, 2016 despite improving mortality rates.

profitability level assumed at pricing for durations from this point forward).

46.     Because non-guaranteed elements such as the COI Rate and Monthly Deduction are required to reflect expectations of *future* experience, Defendants are precluded from re-determining those elements to recoup past losses or past constrained profits. To do so would violate the actuarial standards of practice and code of professional ethics.

47.     As Defendants well know, the massive COI Rate increase and increased Monthly Deduction will cause numerous of Class Members to surrender their Policies and cause many other Policies to lapse as the highly increased Monthly Deduction charges quickly exhaust policy values.

48.     The Class Members hit hardest by Lincoln's unconscionable business practice are elderly policyholders, many of whom have dutifully paid premiums for over a decade or more based on the expectation that in their twilight years the Policies would provide protection for their families. Due to age-related underwriting considerations, life insurance protection for these elderly policyholders and Plaintiffs is now either unavailable or prohibitively expensive; thus Defendants' actions have stripped Plaintiffs and the Class of future life insurance protection.

49.     Lincoln's attempt to deprive Plaintiffs and the Class Members of the primary benefit of their Policies – paid for through years of contributions to their policy values – violates Lincoln's express and implied obligations under the Policies, amounts to "unlawful" and "unfair" conduct, and (in the case of Policyholders aged sixty-five or older) statutory elder abuse.

50.     Plaintiffs therefore respectfully seek immediate necessary and appropriate legal and equitable relief to halt and reverse the COI Rate increase and consequent Monthly Deduction increase. Unless Lincoln is enjoined, the Policyholders will be irreparably damaged and Lincoln will succeed with its plan to cause mass cancellations of the Policies – leaving tens of thousands of Policyholders without coverage based on an unlawful, unfair and abusive COI Rate increases.

51.     Accordingly, Plaintiffs seek damages, declaratory relief and injunctive relief requiring Lincoln to (i) reverse the unlawful increase in Monthly Deductions charged on the Policies, and (ii) reinstate all Policies that were surrendered or lapsed as a result of the COI Rate

increase and related Monthly Deduction and resulting premium increases.

## CLASS ACTION ALLEGATIONS

52.     This action is brought by Plaintiffs individually and on behalf of the classes described below, pursuant to Rule 23, subdivisions (a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

53.     Plaintiffs seek certification of the following Classes:

**Nationwide Class**

All persons in the United States or its territories who, beginning September 1, 2016, were subjected to a Cost of Insurance Rate increase under a universal life policy issued by Jefferson-Pilot that has resulted or will result in a higher Monthly Deduction charge than that which was applicable under the rate schedule in effect prior than that date.  Excluded from this Class are Defendants, and their affiliates, subsidiaries, agents, board members, directors, officers and/or employees.

**New York Class**

All New York residents who, beginning September 1, 2016, were subjected to a Cost of Insurance Rate increase under a universal life policy issued by Jefferson-Pilot that has resulted or will result in a higher Monthly Deduction charge than that which was applicable under the rate schedule in effect prior than that date.  Excluded from this Class are Defendants, and their affiliates, subsidiaries, agents, board members, directors, officers and/or employees.

**New Jersey Class**

All New Jersey residents who, beginning September 1, 2016, were subjected to a Cost of Insurance Rate increase under a universal life policy issued by Jefferson-Pilot that has resulted or will result in a higher Monthly Deduction charge than that which was applicable under the rate schedule in effect prior than that date.  Excluded from this Class are Defendants, and their affiliates, subsidiaries, agents, board members, directors, officers and/or employees.

54.     The Nationwide Class is referred to as the "Class."  The New York Class and the New Jersey Class are collectively referred to as the "State Classes."

55.     There are thousands of members of each of the classes described in the foregoing paragraph.  Accordingly, the Class and State Classes consist of thousands of consumers of life insurance and is thus so numerous that joinder of all members is impracticable.  The identities and addresses of the members of the Class and State Classes can be readily ascertained from

business records maintained by Defendants.

56.     The claims asserted by Plaintiffs are typical of the claims of the Class Members.

57.     Plaintiffs are willing and prepared to serve the Court and the proposed Class and State Classes in a representative capacity.  Plaintiffs will fairly and adequately protect the interests of the Class and State Classes and have no interests that are adverse to, or which materially and irreconcilably conflict with, the interests of the other members of the Class.

58.     The self-interests of Plaintiffs are co-extensive with and not antagonistic to those of absent Class Members. Plaintiffs will undertake to represent and protect the interests of absent Class Members.

59.     Plaintiffs have engaged the services of counsel indicated below who are experienced in complex class litigation and life insurance matters, will adequately prosecute this action, and will assert and protect the rights of and otherwise represent Plaintiffs and absent Class Members.

### Rule 23 (b)(2)

60.     This action is appropriate as a class action pursuant to Rule 23 (b)(2).  Plaintiffs seek injunctive relief and corresponding declaratory relief for the Class and State Classes. Defendants have acted in a manner generally applicable to each member of the entire Class and State Classes by imposing the premium and associated COI Rate/Monthly Deduction increase on all Policies owned by Class Members.

61.     Defendants' wrongful actions in unlawfully increasing the premium and Monthly Deduction on the Policies, if not enjoined, will subject Plaintiffs and Class Members to enormous continuing future harm and will cause irreparable injuries to such policyholders, who are compelled to surrender valuable life insurance policies with no economically viable option for alternative life insurance. The adverse financial impact of Defendants' unlawful actions is continuing and, unless preliminarily and permanently enjoined, will continue to irreparably injure Plaintiffs and the Class Members.

**Rule 23 (b)(3)**

62.     This action also is appropriate as a class action pursuant to Rule 23 (b)(3) of the Federal Rules of Civil Procedure.

63.     Common questions of law and fact predominate over any individualized questions. Common legal and factual questions include the following:

a.      Whether Lincoln's actions in hugely and suddenly increasing cost of insurance charges with increased premiums and Monthly Deductions on the Policies through the COI Rate increase are authorized under the terms of the Policies;

b.      Whether Lincoln has breached its contractual obligations owing to Plaintiffs and Class Members;

c.      Whether Lincoln has breached its implied duty of good faith and fair dealing owed to Plaintiffs and the Class Members;

d.      Whether Lincoln has engaged in unfair or unlawful business practices in its dealings with Plaintiffs and the Class Members;

e.      Whether Lincoln has engaged in the financial abuse of elders;

f.      Whether Plaintiffs and the Class Members have been damaged, and if so, are eligible for and entitled to compensatory and punitive damages;

g.      Whether Plaintiffs and the Class Members are entitled to declaratory relief; and

h.      Whether Plaintiffs and the Class Members are entitled to preliminary and permanent injunctive relief, or other equitable relief, against Defendants.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, for at least the following reasons:

a.      Given the age of the Class Members, many of whom are elderly and have limited resources, the complexity of the issues involved in this action and the expense of litigating the claims, few, if any, Class Members could

18

afford to seek legal redress individually for the wrongs that Lincoln has committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

b.  Once Defendants' liability has been adjudicated respecting the COI Rate/Monthly Deduction and consequent premium increase, claims of all Class Members can be determined by the Court;

c.  This action will insure an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions and compliance by Lincoln with the Policies;

d.  Without a class action, many Class Members would continue to suffer injury, and Defendants' violations of law will continue without redress while Lincoln continues to reap and retain the substantial proceeds and reductions in its future liabilities derived from its wrongful conduct; and

e.  This action does not present any undue difficulties that would impede its management by the Court as a class action.

65.  A class action is thus superior to other available means for the fair and efficient adjudication of this controversy. The injuries suffered by individual Class and State Class members are, while important to them, relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendants' conduct. Individualized litigation presents a potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

### *(Breach of Contract – Nationwide Class and all State Classes)*

66.  Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

67.     The Policies are valid, enforceable contracts between Plaintiff and the Class Members and Lincoln, the successor-in-interest to Jefferson-Pilot.

68.     At all relevant times, Plaintiffs and the Class Members have paid premiums to Lincoln and its predecessor Jefferson-Pilot through Monthly Deduction charges under the Policies as established at the inception of the Policies and have otherwise performed all their obligations under the Policies.

69.     As alleged above, Lincoln owes duties and obligations to Plaintiffs and the Class Members under the Policies, including, but not limited to, refraining from imposing premium and COI charges except as authorized under the terms of the Policies.

70.     Lincoln has materially breached the terms and provisions of the Policies by increasing the Cost of Insurance Rate and consequent Monthly Deduction commencing since approximately October 2016, with resulting significant premium increases, for reasons not permitted by the Policies; that is, in order to reduce its credited interest obligations to Plaintiffs and the Class Members and to recoup past losses, dramatically depleting policy values and forcing mass lapses and surrenders of the Policies.

71.     At a minimum, the premium and COI Rate increase is of such a magnitude that, even if legitimate cost of insurance increases were a factor, Lincoln necessarily considered impermissible factors other than the cost of insurance in setting the level of the premium and COI Rate increase.

72.     Lincoln's conduct and material breaches of the Policies have proximately caused damages to Plaintiffs and the Class Members in an amount to be determined at trial.

73.     In addition, unless Defendants are preliminarily and permanently enjoined from continuing to impose COI charges in the form of extraordinary and higher premiums and deduct the unlawfully increased Monthly Deduction charges, Plaintiffs and the Class Members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## SECOND CAUSE OF ACTION

### (Contract Breach of the Implied Covenant of Good Faith
### and Fair Dealing — all State Classes)

74.     Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

75.     The Policies are valid, enforceable contracts between Lincoln, as successor-in-interest to Jefferson-Pilot and Plaintiffs or the Class Members.

76.     Implied in the Policies are contractual covenants of good faith and fair dealing through which Lincoln owes Plaintiffs and the Class Members a duty to act in a manner that did not frustrate their reasonable expectations under the Policies.

77.     Lincoln contractually breached the covenant of good faith and fair dealing because, to the extent Lincoln had the discretion to increase the COI Rate and Monthly Deduction, that discretion was sufficiently constrained under the terms of Policies to support an implied obligation of good faith and fair dealing with respect to the cost of insurance charges and associated extraordinarily higher premiums.

78.      Lincoln's contractual breach of the covenant of good faith and fair dealing has proximately caused damages to Plaintiffs and the Class Members in an amount to be determined at the time of trial.

79.     In addition, unless Defendants are preliminarily and permanently enjoined from continuing to deduct the unlawfully increased Monthly Deduction charges, Plaintiffs and the Class Members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## THIRD CAUSE OF ACTION

### (Tortious Breach of the Duty of Good Faith
### and Fair Dealing —all State Classes)

80.     Plaintiffs refer to the prior paragraphs of this Complaint and incorporate those paragraphs as though set forth in full in this cause of action.

81.     The Policies are valid, enforceable contracts between Lincoln and Plaintiffs or the Class Members.

82.     Life insurance policies, like those owned by Plaintiffs and the Class Members, protect them from the economic harm and risk presented by death.  As is the case with most insurance contracts, the financial interests of Lincoln and the policyholders are directly at odds: Lincoln benefits from increasing the charges to the policyholders and the policyholders are harmed by such increases. As explained above, Lincoln in particular benefits if Plaintiffs and the Class Members are forced to forfeit the Policies because of its increases of the Monthly Deduction because it will have obtained premium payments without having to pay the death benefits or the promised credited interest rates.

83.     For these reasons, Lincoln owes Plaintiffs and the Class Members a heightened duty of good faith and fair dealing. Among other things, Lincoln is required to refrain from doing anything to injure their right to receive the benefits of the Policies.  Lincoln is required to give at least as much consideration to the welfare of the policyholders as it gives to its own interests. Furthermore, Lincoln has a duty to reasonably inform Plaintiffs and the Class Members of their rights and obligations under the Policies.

84.     As alleged above, Lincoln has breached these duties in connection with the increased cost of insurance charges and associated extraordinary higher premiums and COI Rate increase, frustrating the reasonable expectations of Plaintiffs and the Class Members under the Policies and tortiously depriving them of benefits under the Policies.  In increasing the premiums and Monthly Deduction, Lincoln did not give proper consideration to the welfare of Plaintiff and the Class Members and served solely its own interests at their expense. In addition, Lincoln has failed to truthfully, let alone reasonably, disclose or describe its course of conduct, or the basis and reasons for its course of conduct.

85.     Lincoln's alleged acts and omissions were and are unreasonable and without proper cause. If left unabated, Lincoln's conduct will frustrate and deprive Plaintiffs and the Class Members of the reasonably expected benefits of the Policies.

86.     Lincoln has in particular improperly withheld benefits due Plaintiffs and the Class Members under the Policies, because the unlawful increase in the COI Rate/Monthly Deduction and resulting increase in premiums has (a) reduced policy value, (b) reduced the amount of interest credited to their policy value and/or (c) forced the lapse or surrender of policies by policyholders.

87.     Lincoln's tortious breaches of the covenant of good faith and fair dealing have proximately caused damages to Plaintiffs and the Class Members in an amount to be determined at the time of trial.

88.     Lincoln's conduct was intentional and deliberate and constitutes oppression, fraud, or malice.  Plaintiffs and the Class Members are entitled to recover punitive and exemplary damages in an amount to be determined by the trier of fact.  Plaintiffs also seek an order requiring Lincoln to disgorge all that it received in connection with the above-referenced wrongful acts and omissions.

89.     In addition, unless Lincoln is preliminarily and permanently enjoined from continuing to deduct the unlawfully increased Monthly Deduction charges, Plaintiffs and Class Members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

### FOURTH CAUSE OF ACTION

**(Violation of General Business Law § 349 - New York Class)**

90.     Plaintiff Zirinsky refers to the prior paragraphs of this Complaint and incorporates those paragraphs as though set forth in full in this cause of action.

91.     New York General Business law § 349 prohibits the use of deceptive acts or practices in the conduct of any business, including insurance, in the state of New York.

92.     Under the language of the policies, Defendants offered flexible premiums that would allow policyholders to fund only enough premiums to cover the monthly deductions, that the Company would not raise the COI Rate and consequent Monthly Deduction except based on

23

certain anticipated future expense factors stated in the policies and as, acknowledge by its NAIC filings, would not raise the cost of insurance in order to recoup past losses. Defendants made those representations in the Policies, on its website, its marketing materials and press releases, and its interrogatory responses in Lincoln's 2015 Annual Statement to the NAIC.

93.     Defendants have willfully violated Section 349 by increasing COI Rates in order to recoup past losses despite assurances and representations that it would not do so, and doing so as part of an unfair and deceptive scheme designed to force policy lapses by virtue of burdensome premium increases — a tactic known as "shock lapses."

94.     The aforementioned conduct is likely to mislead and has misled reasonable consumers acting reasonably under the circumstances. For example, reasonable consumers expect that when they purchase flexible-premium universal life insurance, they need only pay the minimum premiums required to cover the COI charges and standard expense charges. No reasonable consumer would expect that Defendants would punish consumers for doing exactly that, force them to increase their policy values upon threat of massive COI increases, and thereby effectively convert their flexible-premium policies into fixed-premium policies, or otherwise force them to let their policies lapse in the fact of such premium adjustments.

95.     Defendants' conduct is consumer-oriented and of a recurring nature. Lincoln, and its predecessor Jefferson-Pilot, marketed and sold Policies to the public at large in New York pursuant to form insurance policies that are contracts of adhesion. Thousands of such Policies have been sold and thousands of the policyholders have been affected.

96.     As a direct proximate cause of violation of Section 349, Plaintiffs and Class Members have been damaged as alleged herein in an amount to be proven at trial.

97.     Plaintiffs, on behalf of themselves and the Class Members seek monetary damages and injunctive relief, as well as costs and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

**(Violation of the New Jersey Consumer Fraud Act,
N.J. Stat. Ann. § 56:8-1 *et seq.* - New Jersey Class)**

98.    Plaintiff Bharwani refers to paragraphs 1-89 of this Complaint and incorporates those paragraphs as though set forth in full in this cause of action.

99.    Defendants' conduct constitutes an extremely sophisticated method of deception.

100.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

101.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

102.    Defendants intentionally and knowingly misrepresented material facts regarding its intent and ability to increase COI Rates and knowingly deceived policyholders and regulatory agencies or bodies by expressly and impliedly representing that cost of insurance charges would not be raised to recoup past losses when, in fact, they were, and, additionally, by their scheme, as alleged heretofore, to force or induce shock lapses by policyholders, including elderly Class Members.

103.    Defendants knew or should have known that its conduct violated N.J. CFA.

104.    Defendants owed Plaintiff and the New Jersey class a duty to disclose the truth at all times material.

105.    Defendants' conduct has proximately caused injuries to Plaintiff and the other New Jersey class members.

106.    Defendants' conduct proximately caused injuries to Plaintiff and the other New Jersey class members.

107.    Defendants' violations present a continuing risk to Plaintiff, the New Jersey Class Members and the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

108.    Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiff Bharwani will serve the New Jersey Attorney General with a copy of this Complaint within 10 days of filing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Nationwide Class and State Classes, pray for relief as follows as applicable for the particular cause of action:

1.    Declaring this action to be a proper class action maintainable to Rule 23(a) and Rule 23(b)(1) and (2), or Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representative of the Class;

2.    Awarding damages sustained by Plaintiffs and all Classes as a result of Defendants' conduct, together with pre-judgment interest;

3.    Awarding Plaintiffs, the Nationwide Class, and their respective State Classes costs and disbursements and reasonable allowances for the fees of Plaintiffs' and the Class's counsel and experts, and reimbursement of expenses;

4.    Awarding Plaintiffs and the Nationwide Class and their respective State Classes damages, injunctive relief, declaratory relief, attorney's fees, and costs; and

5.    Awarding such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

Dated: December 23, 2016                                Respectfully submitted,

                                                                            **Barrack, Rodos & Bacine**

                                                                            Jeffrey W. Golan
                                                                            Robert A. Hoffman
                                                                            Lisa M. Port
                                                                            3300 Two Commerce Square
                                                                            2001 Market Street
                                                                            Philadelphia, PA  19103
                                                                            Telephone: (215) 963-0600
                                                                            Facsimile: (215) 963-0838

26

and

Stephen R. Basser
One America Plaza
600 W. Broadway, Suite 900
San Diego, CA 92101
Phone: (619) 230-0800
Facsmile: (619) 230-1874

**Bonnett, Fairbourn, Friedman &**
   **Balint, P.C.**
Andrew Friedman
2325 E Camelback Rd #300
Phoenix, AZ 85016
Telephone: (602) 274-1100

**Sarraf Gentile LLP**
Joseph Gentile
Ronen Sarraf
14 Bond Street #212
Great Neck, NY 11021
Telephone: (516) 699-8890

**Emerson Scott, LLP**
John G. Emerson
840 Apollo Lane
Houston, TX  77058
Telephone: (281) 488-8854
Facsimile:  (281) 488-8867

***Attorneys for Plaintiffs***