## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: LINCOLN NATIONAL COI LITIGATION ) | No.: 16-cv-06605-GJP |
| ) |  |
| ) |  |
| EFG BANK AG, CAYMAN BRANCH, *et al.*, ) |  |
| ) |  |
| *Plaintiffs*, ) |  |
| ) |  |
| v. ) | No.: 17-cv-02592-GJP |
| ) |  |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, ) |  |
| ) |  |
| *Defendant*. ) |  |

**PAPPERT, J.**                                                      **March 9, 2020**

## **MEMORANDUM**

Plaintiffs and Lincoln National Life Insurance Company asked the Special Master to review *in camera* certain documents that Lincoln claimed were privileged. The Special Master issued an Opinion ruling that all or portions of twenty-one documents were not privileged and thus must be disclosed to the Plaintiffs. Lincoln now objects to that Opinion as it relates to ten documents. The Court overrules Lincoln's Objections and adopts the Special Master's Opinion.

I

Before this litigation arose, Lincoln, through its outside counsel (Greenberg Traurig, LLP) retained two consulting firms to help update its mortality assumptions and set new cost of insurance (COI) rates. *See* (Joint Statement of Discovery Disputes

Ex. 2, at ¶¶ 3–5, ECF No. 62-12) (Smith Decl.).[1]  The Consultants worked closely "with Lincoln non-legal personnel" regarding "the eventual redetermination of COI rates"; Lincoln "did not regard such work as privileged or protected work product."  (*Id.* at ¶ 7.) Rather, it intended the attorney-client privilege to attach to only those "privileged communications concerning issue-specific legal advice [Greenberg Traurig] provided to Lincoln."  (*Id.*)  That said, Lincoln did envision that its in-house lawyers and Greenberg Traurig might rely on the consultants "in connection with the provision of legal advice to Lincoln."  (*Id.* at ¶ 6.)  But as it turned out, "[t]he legal questions presented to [Greenberg Traurig] did not require [it] to rely on assistance regarding actuarial matters from either of the Consultants."  (Joint Statement of Discovery Disputes Ex. 4, at ¶ 8, ECF No. 62-17) (Berlin Decl.).

During discovery, Lincoln produced two reports the consultants had created but refused to turn over related documents that it claimed were privileged.  *See* (Joint Statement of Discovery Disputes 1–2, 5–7, ECF No. 62).  According to the Plaintiffs, the consultants' reports were privileged, so by producing the reports Lincoln had waived any claim of privilege covering documents of the same subject matter.  *See* (*id.* at 1–5). Lincoln, however, argued that the reports were not privileged, meaning there had been no waiver.  *See* (*id.* at 7–9).

The Special Master deferred ruling on whether the reports themselves were privileged.  Instead, he concluded that Plaintiffs may be entitled to some of the underlying documents under both parties' theories.  He then ordered the parties to

[1]      As the Special Master and parties did, the Court cites the ECF numbers listed on the 17-02592 docket.  Identical versions of each document are also on the docket in the 16-06605 action.

work together to limit the disputed documents and then submit for *in camera* review only those documents about which they could not agree. *See* (ECF No. 77).

After the parties submitted documents for review, the Special Master concluded that twenty-one documents were not privileged and must be disclosed to the Plaintiffs. *See* (Special Master Op. 8–12, ECF No. 111). In ruling on ten of those twenty-one documents, the Special Master relied on *BouSamra v. Excela Health*, 210 A.3d 967 (Pa. 2019). *See* (*id.* at 10–11). He read that case as "declin[ing] to expand the attorney-client privilege to encompass outside consultants unless the consultants' 'presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client.'" (*Id.* at 10) (quoting *BouSamra*, 210 A.3d at 985). Noting that Lincoln had "disclaimed that the consultants' services were necessary for the provision of legal advice," the Special Master concluded that the ten documents were not privileged. (*Id.*)

Lincoln objects to the Special Master's Opinion regarding those ten documents.[2] It argues that the Special Master erred in ruling that, under *BouSamra*, the attorney-client privilege cannot attach to the consultants' requests for legal advice from Lincoln's in-house counsel. *See* (Objs. 1, ECF No. 113). According to Lincoln, the Special Master mistakenly read *BouSamra* as rejecting the functional-equivalent doctrine, under which "consultants are treated similarly to employees for purposes of privilege analysis." (*Id.* at 2 (quoting *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2013 WL 4836752, *6 (E.D. Pa. Sept. 11, 2013))). Lincoln adds that the Special Master also erred

---

[2] Lincoln filed the disputed documents under seal. *See* (Exs. 2–11, ECF No. 116.) The Court has thoroughly examined each document.

in believing that Lincoln had "disclaimed that the consultants' services were necessary for the provision of legal advice." (*Id.* at 5.)

## II

The Court reviews the Special Master's findings of fact and conclusions of law *de novo*. *See* Fed. R. Civ. P. 53(f)(3), (4). Although some courts treat a Special Master's discovery recommendations as procedural matters, which are reviewed for abuse of discretion, *see, e.g.*, *Ramos v. Banner Health*, 2018 WL 4700707, at *2 (D. Colo. Aug. 8, 2018) (unpublished), other courts conduct *de novo* review for many discovery issues, *see, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449 (N.D. Cal. 2014). Given the nature of the discovery disputes here, the Court concludes that *de novo* review is appropriate. *See Callwave Commc'ns LLC v. AT&T Mobility LLC*, No. CV 12-1701-RGA, 2016 WL 3450736, at *1 (D. Del. June 16, 2016) (unpublished) (reviewing *de novo* objections relating to attorney-client privilege).

## III

Pennsylvania law prohibits lawyers from revealing confidential communications made by a client, unless the client waives the privilege. Pa. Cons. Stat. Ann. § 5928. A party invoking attorney-client privilege must prove that: (1) the claimed "holder of the privilege is or sought to become a client"; (2) the communication was made to a lawyer or his subordinate; (3) "the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers," to get a legal opinion, "legal services or assistance in a legal matter"; and (4) "the privilege has been claimed and is not waived." *BouSamra*, 210 A.3d at 983 (quotation and alterations in original omitted).

For corporations, "the attorney-client privilege 'extends to communications between its attorney and agents or employees authorized to act on the corporation's behalf.'" *Id.* (quotation omitted). But that privilege ordinarily does not attach to communications made in the presence of a third party. *See id.* 984. And disclosing an originally privileged communication to a third party waives the privilege. *See id.* at 985. An exception exists for third parties whose "presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client." *Id.* But evidentiary privileges—such as the attorney-client privilege—are "highly disfavored in Pennsylvania," so "the scope of such [third-party] situations must remain narrowly tailored." *Id.* at 986 n.15.

The Special Master correctly ruled that the ten documents here are not privileged. For the communications between Lincoln's in-house counsel and Lincoln employees, Lincoln fails to show that these intra-company communications were made to get a legal opinion, "legal services or assistance in a legal matter." *Id.* at 983. Regarding the communications between Lincoln's in-house counsel and the consultants, Lincoln cannot prove that the consultants' "presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client." *Id.* at 985. To the contrary, Lincoln has claimed that it used the consultants' work "to adjust COI rates—an ordinary course business activity." (Joint Statement of Discovery Disputes 9.) Nothing in the ten documents suggests that the relevant communications involved anything other than that ordinary business activity or that the consultants in any way facilitated in-house counsel's legal advice to Lincoln.

Lincoln's objections miss the point. Although *BouSamra* did not reject the functional-equivalent doctrine, it clarified that the attorney-client privilege attaches to communications to third parties only if "the third-party's presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client." *BouSamra*, 210 at 985. The consultants do not fit within that narrow exception. Lincoln's straw-man arguments on the functional-equivalent doctrine's formal status in Pennsylvania cannot distract from that fact. In the end, Lincoln asks the Court to ignore the Pennsylvania Supreme Court's guidance and expand a "highly disfavored" evidentiary privilege—all so Lincoln can withhold documents relating to reports that Lincoln itself put at issue. *Id.* at 986 n.15. The Court declines to do so.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.